UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN OWENS,

    *Plaintiff*,

v.

GARY SCHEUTTE, et al.,

    *Defendants*.

_____/

Case No. 2:24-cv-10787

District Judge
Gershwin A. Drain

### ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Before the Court is Plaintiff Marvin Owens' ("Plaintiff") Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction. ECF No. 2. Defendants in this action, Gary Scheutte, Anthony Stewart, Mike Coburn, and Tiggs Canteen Services, Inc. (collectively, "Defendants"), have not received official notice of the Motion. Therefore, the Court considers his request for relief pursuant to Federal Rule of Civil Procedure 65(b)(1). For the reasons stated herein, Plaintiff's Motion will be granted.

### I. BACKGROUND

Plaintiff is an inmate at Jackson County Jail ("JCC") and is a practicing Muslim. He thus adheres to the spiritual requirements of Ramadan, a holy month in the Islamic faith during which devotees fast without food or drink from dawn to

1

sunset. This year, Ramadan began roughly at sunset on March 9 and will end April 9 at sunset. Plaintiff filed a Complaint with this Court on March 28 asserting four causes of action: Count I – Violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA); Count II – Violation of the Free Exercise Clause of the First Amendment; Count III – Violation of the Equal Protection Clause of the Fourteenth Amendment; and Count IV – Cruel and Unusual Punishment in Violation of the Eighth Amendment. ECF No. 1.

He alleges that for the first three days of Ramadan, March 10–13, JCC officials failed to provide him with pre-dawn and post-sunset meals, requiring him to rely on items he had previously purchased from the jail commissary. *Id.* at PageID.9 ¶¶ 19–20. Further, he claims that for multiple days between March 13 and 26, evening meals were provided long after sunset, sometimes by as much as two hours. *Id.* at ¶ 21.[1] Lastly, Plaintiff alleges that every meal he has received in purported adherence to his religious requirements has been woefully deficient, netting between 1300 and 1900 calories per day between both his pre-dawn and post-sunset meals. *Id.* at PageID.10 ¶ 24. Other meals have been improperly handled or stored, rendering them inedible. *Id.* at PageID.11 ¶ 29. Because of these deficiencies

---

[1] Plaintiff asserts that Islamic teachings "prohibit a Muslim from extending their fast beyond the moment of sunset and require that an adherent Muslim hasten to break their fast during Ramadan." ECF No. 1, PageID.10 ¶ 23.

in his diet, Plaintiff has allegedly been forced to break adherence to his faith and has suffered physical consequences associated with malnutrition.

Shortly after the Complaint was filed, Plaintiff filed a motion seeking a temporary restraining order and a preliminary injunction. ECF No. 2. He argues that his direct requests for relief have gone unheeded, so the Court must enter an order requiring Defendants to, among other things, supply him with timely and nutritionally adequate meals during Ramadan. *Id.* at PageID.56.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the Court may issue a temporary restraining order ("TRO") without notice to the adverse party or parties if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). When deciding a motion for a temporary restraining order, the Court considers (1) the movant's likelihood of success on the merits; (2) irreparable injury to the movant; (3) substantial harm to others caused by the temporary order; and (4) whether the public interest would be served in granting the motion. *Bobay v. Wright State Univ.*, No. 22-4007, 2023 U.S. App. LEXIS 14825, at *6 (6th Cir. June 13, 2023). These considerations need only be balanced, as they are not prerequisites

3

for issuing a TRO. *Smith v. State Farm Fire & Cas. Co.*, 737 F. Supp. 2d 702, 708 (E.D. Mich. 2010).

### III.  ANALYSIS

Plaintiff has moved for both a temporary restraining order and a preliminary injunction. However, the Court declines to rule on Plaintiff's Motion for a preliminary injunction at this time because such an order may not issue without notice to the adverse party. Fed. R. Civ. P. 65(a)(1). As the Court will grant the request for a temporary restraining order, it will also schedule a merits hearing on the preliminary injunction request under Rule 65(b)(3). *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, No. 22-3148/3377, 2023 U.S. App. LEXIS 2951, at *13 (6th Cir. Feb. 6, 2023) (finding that failure to provide the adverse party an opportunity to be heard after a TRO is issued constitutes reversible error).

**A.  Plaintiff Has Exhausted The Available Grievance Procedure.**

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available administrative remedies before filing an action related to prison conditions under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). An inmate "exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Frazier v. Morley*, No. 22-5965, 2023 U.S. App. LEXIS

4

25286, at *6 (6th Cir. Sep. 22, 2023) (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)). Thus, an individual prison's requirements determine what constitutes proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Nonetheless, an inmate is not required to exhaust unavailable remedies before seeking external relief with the courts. *Coopwood v. Wayne Cty.*, 74 F.4th 416, 422 (6th Cir. 2023). Remedies incapable of redressing the complaint need not be exhausted. *Id.*

Plaintiff states that the JCC requires inmates to matriculate a four (or more) step grievance process that requires them to coordinate with multiple JCC officials before the process is complete. ECF No. 2, PageID.47. One of the initial steps includes voicing concerns directly to prison staff on duty at the time the grievance arises. *Id.* Importantly, the JCC's procedures do not provide inmates a timeframe for resolution of their grievances. *Id.* at PageID.48. Plaintiff argues that he has satisfied the PLRA's exhaustion requirements. He says he started the process on March 10, 2024 by filing a complaint with JCC officials to complain about his need for religious accommodations. *Id.* at PageID.46. He also repeatedly filed complaints about his post-sunset meals, the quality of the food, and the lack of adequate food on March 13. *Id.*; ECF No. 1, PageID.16–17. ¶ 48. After waiting roughly two weeks, during which time his meals remained inadequate, he resorted to filing a Complaint and seeking a TRO. ECF No. 2, PageID.37, 48.

Plaintiff does not claim that these actions encompass the entire four-step procedure outlined by the JCC, which would likely require an approval/denial and appeals process. However, he asserts that the additional grievance steps are not "available" to him because the JCC does not offer a timeframe for relief and does not offer an emergency grievance procedure. *Id.* For these reasons, he asserts in the Complaint that "the grievance process is insufficient to address the nature of Plaintiff's complaint because it is unlikely to resolve itself by the end of the one-month Ramadan period." ECF No. 1, PageID.17 ¶ 51.

Additionally, he attempted to supplement his complaints to the jail with external letters and emails on his behalf. He attaches to his Motion the affidavit of Nour Ali, Director of Safe Spaces with the Michigan chapter of the Council on American-Islamic Relations. ECF No. 2-1. Ali states that he sent an email to JCC Defendants Stewart and Coburn on March 13, 2024, "advising them that Mr. Owens was not being accommodated for the holy month of Ramadan and providing a description of the Islamic requirements . . ." *Id.* at PageID.58 ¶ 2. Ali states that he sent additional emails and made phone calls on March 19, 21, 26, and 27 further attempting to highlight the problem. *Id.* at ¶¶ 3-11. Ali states that when he received responses, JCC officials informed him that the problem was or would be addressed. Nonetheless, Plaintiff asserts that his issue is ongoing.

The Court finds that Plaintiff satisfied the PLRA in this case. Inmates are not required to spin their wheels seeking administrative remedies while the time during which they could enjoy any relief ticks away. Rather, they are expected "to exhaust only those grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 633 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The JCC's remedies were not available to Plaintiff in this instance. To be sure, Ramadan is only one month long. Plaintiff asserts that he has spent the first two weeks of the holy month asking JCC officials to feed him in a quantity appropriate for his personal needs and during a time of day necessary for his religious needs. With no emergency grievance procedure available, Plaintiff was not able to expedite his request, making it possible that Ramadan ends entirely before each step of the grievance procedure was complete.

In sum, Plaintiff attempted to utilize the grievance process offered at JCC and to otherwise highlight his religious needs. The Court is convinced that with the limited time left to remedy Plaintiff's complaints, the full extent of the JCC's administrative remedies were not available at the time this action was filed. As such, the PLRA's exhaustion requirements have been met.

**B.     A Temporary Restraining Order is Appropriate.**

The substantive facts strongly support this Court's issuance of a TRO. First, Plaintiff has shown a strong likelihood of success on the merits under the First

Amendment and RLUIPA. The statute provides in pertinent part that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . ." furthers "a compelling governmental interest" and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a) (1)-(2). Further, the Sixth Circuit has held that under the First Amendment, jail administrators "must provide an adequate diet without violating the inmate's dietary restrictions." *Welch v. Spaulding*, 627 F. App'x 479, 482 (6th Cir. 2015) (denying qualified immunity where Muslim inmate was receiving half of daily recommended calorie allotment during Ramadan).

Plaintiff alleges that the JCC's failure to provide timely and nutritionally adequate meals burdens the free exercise of his religion and imposes discriminatory restrictions not faced by non-Muslim inmates. ECF No. 1, PageID.18–20. He claims that the JCC's practice of feeding him too late forces him to fast for longer than permitted under Islamic teachings (*Id.* at PageID.10 ¶¶ 22–23) and that its practice of feeding him too little leaves him constantly hungry and malnourished (*Id.* at PageID.10–11 ¶¶ 24–25). Further, Plaintiff has begun losing weight and experiencing other symptoms of malnutrition like dizziness and hunger pangs. *Id.* at PageID.28 ¶ 105. He also alleges that non-Muslim inmates are not burdened with a similarly inadequate diet. *Id.* at PageID.19 ¶¶ 56–59.

These and other specific allegations in the complaint demonstrate that the JCC's acts and omissions place a discriminatory and substantial burden on Plaintiff's religious exercise. An adequate diet contemplates both the amount of food and, in this context, when the food is served. A prison's failure in either category could coerce a fasting inmate to break his practice. Failure in both quite likely places a "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hobbie v. Unemployment Appeals Com.*, 480 U.S. 136, 141 (1987). Lastly, Defendants have no compelling penological or other government interest not to meet Plaintiff's needs, especially since the jail's current Ramadan meal plan already prescribes a diet that would be adequate in this case. *See* ECF No. 1-1, PageID.35. At this stage, the fact that Plaintiff suffers burdensome dietary restrictions unique to his religious exercise appears wholly unjustified and supports a finding that he is likely to succeed on the merits.

Plaintiff has also shown that the equitable factors support issuing a TRO in this case. The Court is convinced that without immediate action, Defendants will continue to feed him hours after sunset, preventing him from hastening to end his fast according to Islamic principles. This harm is irreparable because, if this Court were to deny relief until final judgment, Plaintiff could not go back and reobserve his fast during Ramadan. The holy month would be over. Further, any eventual money damages cannot fully compensate his harm as it is based on a constitutional

9

violation. *Downing v. Life Time Fitness*, 483 F. App'x 12, 21 (6th Cir. 2012) (finding that "a plaintiff can demonstrate irreparable harm if the plaintiff's claim is based on a constitutional violation[.]"). The risk of harm also weighs heavily in Plaintiff's favor, as Defendants are asked only to feed him in accordance with a meal plan that is already in place. Novel provisions need not be made. Conversely, the Court risks further burden on Plaintiff's genuinely held religious beliefs if relief is denied any longer. Lastly, there is a strong public interest favoring free religious exercise and equitable nutrition in government facilities.

For these reasons, Plaintiff's request for a temporary restraining order will be granted.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order is **GRANTED**. The parties will appear for an expedited hearing on the preliminary injunction request on April 2, 2024 at 10 a.m.

**IT IS THEREFORE ORDERED** that so long as Ramadan continues, Defendants immediately provide Plaintiff with daily meals strictly adhering to the Canteen Services Ramadan Meal Plan. *See* ECF No. 1-1, PageID.35.

**IT IS FURTHER ORDERED** that so long as Ramadan continues, Defendants deliver Plaintiff his morning meal no later than one hour before dawn

and deliver his evening meal at sundown. Defendants **SHALL** keep a record of the time at which these meals are delivered.

**IT IS FURTHER ORDERED** that Plaintiff's attorney serve upon Defendants a copy of the Complaint and this Order at her earliest convenience.

This Order remains in effect through the end of April 9, 2024, or until further order of this Court, whichever comes first.

**IT IS SO ORDERED**.

Dated: March 29, 2024 /s/ Gershwin A. Drain
GERSHWIN A. DRAIN
U.S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 29, 2024, by electronic and/or ordinary mail.
/s/Amanda Chubb
For Lisa Bartlett, Case Manager