UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN OWENS,

Plaintiff,

Case No.: 2:24-cv-10787
v.                                                    Hon. Gershwin A. Drain

GARY SCHUETTE *et al.*,

Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [ECF No. #19]

### I.   INTRODUCTION

Marvin Owens ("Plaintiff"), a former inmate at Jackson County Jail, sued Jackson County Sheriff Gary Schuette, Captain Anthony Stewart, Lieutenant Mike Coburn, and Tiggs Canteen Services, Inc.[1] (together, "Defendants") for alleged Constitutional violations arising out of the meals Plaintiff was provided at the jail during Ramadan. *See* ECF No. 1. Plaintiff claims violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), violation of Plaintiff's right to

---

[1] Tiggs Canteen Services was terminated as a party on April 26, 2024 upon the parties' stipulation. ECF No. 21. As such, this Opinion will not discuss the previous claims against Tiggs.

free exercise of religion (First and Fourteenth Amendments), violation of Plaintiff's right to equal protection (First and Fourteenth Amendments), and violation of Plaintiff's right to be free from cruel and unusual punishment (Eighth and Fourteenth Amendments). *Id.* at PageID.18–29. For these violations, Plaintiff seeks declaratory and injunctive relief, along with damages. *Id.* at 30–32.

Presently before the Court is Defendants' Motion to Dismiss all of Plaintiff's claims, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 19. Plaintiff responded in opposition. ECF No. 25. In addition, the parties' supplemental briefs regarding the availability of damages in this action are before the Court, and the Court's rulings on this issue are incorporated into this Opinion. *See* ECF No. 18; ECF No. 23. Upon review of Plaintiff's motion, the Court finds that oral argument will not aid in its disposition. Accordingly, the Court will resolve the present motion on Plaintiff's and Defendants' briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the motion shall be **GRANTED.**

## II.    FACTUAL BACKGROUND

### a. Overview

Plaintiff Marvin Owens was arrested and booked in the Jackson County Jail on July 28, 2023, for various charges that occurred while he was a parolee under the control of the Michigan Department of Corrections ("MDOC"). ECF No. 14, PageID.115. Owens pled no contest to his charges on December 1, 2023. *Id.* Once

Plaintiff was sentenced for these crimes in May 2024, he was transferred from Jackson County Jail back to an MDOC facility. ECF No. 19, PageID.310; ECF No. 25, PageID.668, 670.

Plaintiff is a practicing Muslim. ECF No. 1, PageID.8. During his stay at Jackson County Jail, he observed the Islamic holy month of Ramadan which began on or about March 10th or 11th, 2024, and ended on or about April 9th or 10th, 2024. *Id.* at PageID.8–9.[2] During Ramadan, practicing Muslims eat a morning meal (called *suhoor*) before dawn; they then fast during the entirety of daylight hours. *Id.* at PageID.2. At sunset, they eat an evening meal (called *iftar*) to break their fast. *Id.* Jackson County Jail has a policy that accommodates fasting Muslim inmates by providing them meals before dawn and at sunset. ECF No. 1-1, PageID.35.

Plaintiff alleges, however, that the Jail did not provide him with a predawn or sunset meal for the first three days of Ramadan. ECF No. 1, PageID.9. As a result, he was forced to rely on commissary purchases for sustenance. *Id.* Following the three days that Plaintiff was not given any meals, the Jail did begin providing him with predawn and sunset meals. But Plaintiff alleges that for several days between March 13 and March 26, 2024, his sunset meals were served two or more hours after sunset—which conflicts with Islam's teaching to break one's fast as soon as possible

---

[2] Ramadan is the ninth month of the Islamic calendar, which is a lunar-based calendar. ECF No. 1, PageID.9.

after sunset. *Id.* at PageID.9–10. Furthermore, Plaintiff alleges that the meals he was served were, on average, between 1,300 and 1,900 calories per day, which is less than a healthy adult male requires and less than the Jail's Ramadan diet prescribes.[3] *Id.* at PageID.11; ECF No. 1-1.

As a result, Plaintiff filed the instant action in federal court, seeking declaratory, injunctive, and monetary relief. ECF No. 1, PageID.30–32. Plaintiff sues Defendant Schuette in his official capacity only, and Defendants Stewart and Coburn in their individual and official capacities. *Id.* at PageID.5–7. Because Ramadan was still ongoing at the time, Plaintiff filed an emergency motion for a temporary restraining order ("TRO") and a preliminary injunction, seeking to compel Defendants to supply timely and adequate nutrition to Plaintiff. ECF No. 2, PageID.40. The Court granted Plaintiff's motion for a TRO, finding that based on the Complaint's allegations, Plaintiff exhausted the Jail's grievance procedure in conformance with the Prison Litigation Reform Act ("PLRA") and that a TRO was appropriate. ECF No. 3. The Court reserved ruling on the request for a preliminary injunction. *Id.* Thereafter, Defendants responded to Plaintiff's motion in opposition. ECF No. 14.

After a hearing on the merits, the Court declined to award a preliminary injunction. ECF No. 17. In addition, the Court ordered the parties to submit briefs

---

[3] The Jail's Ramadan diet contains 2,800 calories on average. ECF No. 1-1.

addressing whether damages were an available remedy in this action, which Plaintiff submitted on April 25, 2024, ECF No. 18, and Defendants submitted on May 2, 2024. ECF No. 23. The Court has not yet ruled on the issue of whether damages are available.

### a. The Present Motion

Defendants have moved to dismiss Plaintiff's Complaint in lieu of filing an answer. *See* ECF No. 19. Defendants raise several arguments in support of dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argue that Plaintiff lacks standing for declaratory or injunctive relief, that Plaintiff's claims are barred by the PLRA, that Plaintiff is not entitled to damages under RLUIPA, and that Plaintiff's claim under RLUIPA is deficient. ECF No. 19, PageID.310, 312–313; ECF No. 14, PageID.130; ECF No. 23. Furthermore, Defendants allege several reasons why Plaintiff's official and individual capacity claims under § 1983 must fail. ECF No. 19, PageID.313, 320–26. Plaintiff opposes each of these arguments in turn. *See* ECF No. 25.

Despite framing their motion to dismiss under Rule 12, Defendants frequently reference extrinsic evidence in their argument.[4] Plaintiff objected to the use of extrinsic evidence. *See, e.g.*, ECF No. 25, PageID.664, 668, 672. The Court will not

_____

[4] The majority of the extrinsic evidence referenced is from the parties' briefing on the preliminary injunction issue.

consider the extrinsic evidence in its decision on the present Motion and construes the Motion as a motion to dismiss rather than a motion for summary judgment.

## III.   LAW & ANALYSIS

### a.  Legal Standard for Motions to Dismiss

A motion to dismiss for lack of subject matter jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(1). *Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Housing Ass'n v. Beasley*, 71 F. Supp. 3d 715, 722–23 (E.D. Mich. 2014). Rule 12(b)(1) motions can be categorized as facial attacks or factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id.* (emphasis in original). In such an instance, the court takes the material allegations of the petition as true and construes them in the light most favorable to the nonmoving party. *Id.* In contrast, "[a] *factual* attack… is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id.* (emphasis in original). There is no presumption of truthfulness to the factual allegation, and the court is free to weigh evidence to determine its power to adjudicate the case. *Id.* "The party invoking federal jurisdiction bears the burden of establishing" the elements of jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

A motion to dismiss for failure to state a claim is brought under Federal Rule of Civil Procedure 12(b)(6) and tests the sufficiency of the pleadings by asking whether the complaint states a claim upon which relief may be granted. *See Bassett v. Nat'l College Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Rule 8(a)(2) requires a plaintiff's complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this standard does not require "detailed factual allegations," a plaintiff's pleadings must raise "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the factual allegations must "raise a right to relief above the speculative level," and must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss under Rule 12(b)(6), a court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)) (alterations added).

### b. Motion to Dismiss under Rule 12(b)(6) vs. Summary Judgment under Rule 56

Generally, assessment of the sufficiency of the pleadings under a Rule 12(b)(6) motion "must be undertaken without resort to matters outside the pleadings." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011).

If a court considers extrinsic evidence when analyzing the motion to dismiss, the court must convert the motion into a motion for summary judgment under Rule 56, "and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed R. Civ. P. 12(d); *Rice v. Wells Fargo Home Mortg.*, No. 06-cv-15312, 2007 WL 4126525, at \*5 (E.D. Mich. Nov. 19, 2007). The Sixth Circuit has further clarified that a court "may consider exhibits attached to the complaint, exhibits attached to the motion to dismiss briefing, items in the record, or public records without converting the motion to dismiss *when these items are referred to in the complaint* and are central to the claims contained therein." *Wershe v. City of Detroit*, 112 F.4th 357, 372–73 (6th Cir. 2024) (quoting *Bassett*, 528 F.3d at 430) (internal quotation marks omitted) (emphasis added). Whether a court must provide actual notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the circumstances of the case; however, "[w]here one party is likely to be surprised by the proceedings, notice is required." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998).

Here, in some instances throughout their Motion, Defendants referred to extrinsic evidence when making their arguments that dismissal is appropriate. Plaintiff argues that Defendants are attempting to convert the Motion into a summary judgment motion, and claims that "the plain language of Rule 56 states that a party

filing a motion under this rule can do so only after discovery has concluded." ECF No. 25, PageID.663.

Although the evidence Defendants offer is already in the record from the preliminary injunction briefing, the Court's consideration of the evidence here would convert this Motion into a motion for summary judgment, because the evidence was not referred to in Plaintiff's Complaint. *See Wershe*, 112 F.4th at 372– 73. Thus, the Court must either convert this Motion into a motion for summary judgment and give Plaintiff an opportunity to present all relevant materials, or decline to consider the evidence offered by Defendants. *See* Fed. R. Civ. P. 12(d); *Rice*, 2007 WL 4126525, at *1.

Plaintiff is incorrect that a summary judgment motion cannot be brought until after discovery closes. Indeed, the plain text of Rule 56 indicates that "a party may file a motion for summary judgment *at any time until* 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). As the Advisory Committee explained, the rule "allows a party to move for summary judgment at any time, *even as early as the commencement of the action*." Fed. R. Civ. P. 56(b) advisory committee's note to 2009 amendment (emphasis added). Of course, under Rule 56(d), Plaintiff may request more time to conduct discovery "by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify

[his] opposition." Fed. R. Civ. P 56(d); *see Zakora v. Chrisman*, 44 F.4th 452, 479 (6th Cir. 2022).

Although the Court has the power to convert this Motion into a motion for summary judgment, the Court instead finds that the Motion can be disposed of on the pleadings without consideration of the evidence. As such, the Court proceeds to treat the Motion as one for dismissal under Rule 12.

### c. Standing/Mootness

### i. *Legal Background*

Under Article III of the U.S. Constitution, federal courts are given jurisdiction only over "cases" and "controversies." U.S. Const. art. III § 2; *Lujan*, 504 U.S. at 559–60. The doctrine of standing developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood" under Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). There are three requirements that need to be met, at minimum, in order for a plaintiff to have standing to be heard in federal court: (1) the plaintiff must have an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely that the injury is redressable by a favorable court decision. *Lujan*, 504 U.S. at 560–61. These standing requirements are "an essential and unchanging part of the case-or-controversy requirements of Article III." *Id.* at 560.

The doctrine of mootness is "similar" to standing, "but they are not the same." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017). While standing ensures that a plaintiff has a personal stake in the outcome of litigation at the outset, mootness "is akin to saying that, although an actual case or controversy once existed, changed circumstances have intervened to destroy standing." *Id.* (quoting *In re 2016 Primary Election*, 836 F.3d 584, 588 (6th Cir. 2016)). In other words, if a plaintiff had standing at the beginning of litigation but loses standing during the litigation, it is more appropriate to say the case is moot. *See id.* Regardless, just as standing is required for a federal court to have jurisdiction over a case, *see Lujan*, 504 U.S. at 561, the absence of mootness is also required. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions.'" (quoting *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920)).

### ii.    *Discussion*

Defendants argue that Plaintiff lacks standing for declaratory and injunctive relief because (1) Ramadan has ended and (2) Plaintiff was transferred back to an MDOC facility in May 2024 after his sentencing, and is therefore no longer an inmate at Jackson County Jail. ECF No. 19, PageID.309. In response, Plaintiff notes that Defendants improperly characterize this as a standing issue when in fact it is a mootness issue. ECF No. 25, PageID.670. Plaintiff argues that his injury is capable

of repetition but evades review, and therefore falls into the exception to the mootness doctrine. *Id.* at PageID.668. Plaintiff admits that he was transferred to another facility, but argues that he could potentially return to Jackson County Jail at some point in the future and suffer the same injury again. *Id.* at PageID.670.

Defendants are factually attacking the existence of federal jurisdiction, so the Court can consider, as a factual matter, whether jurisdiction exists. *See Ritchie*, 15 F.3d at 598. Defendants are correct that, as of now, there is no live controversy that declaratory or injunctive relief could remedy. Because Ramadan is over and Plaintiff is no longer at the Jail, there is no action of the Defendants that the Court could enjoin. "Without a time machine," the Court cannot force Defendants to do anything or prohibit Defendants from doing anything that injured Plaintiff. *Thompson v. DeWine*, 7 F.4th 521, 524 (6th Cir. 2021). Furthermore, declaratory relief would have no effect for Plaintiff. To determine whether a request for declaratory relief is moot, a court asks whether the facts alleged show a substantial controversy "*of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Id.* (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)) (emphasis in original). Here, Plaintiff is serving his sentence for his crimes at MDOC; there is no indication that he will return to Jackson County Jail at any time soon. *See generally Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 169 (2016).

However, the Supreme Court has recognized an exception to the mootness doctrine for a controversy that is "capable of repetition, yet evading review." *Id.* at 170 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). This exception applies in "exceptional situations" where (1) the challenged action is too short in duration to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Id.* (citing *Spencer*, 523 U.S. at 17). The party asserting this exception bears the burden of establishing both prongs. *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005).

Here, Plaintiff's case clearly meets the first prong. Ramadan is a month-long religious event, ECF No. 1, PageID.8, and litigating a civil case in federal court often takes multiple years. Nevertheless, Plaintiff fails to show that he meets the second prong. Plaintiff argues that he could be arrested for other charges and brought to Jackson County Jail again in the future. ECF No. 25, PageID.670. But the prospect of future injury rests on the likelihood that Plaintiff will violate the law, be arrested for that conduct, and be housed in the Jackson County Jail once more. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). The Court must "assume that [Plaintiff] will conduct [his] activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by [Defendants]." *Id.* at 497 (alterations added); *see also Sumpter*, 868 F.3d at 491

13

(finding that because former inmate was no longer at the jail, her claims for declaratory and injunctive relief were moot because it was purely speculative whether she would ever return); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding claims for declaratory and injunctive relief moot because former inmate was no longer confined to the institution that allegedly violated his constitutional rights).

Plaintiff points the Court's attention to *Chaaban v. City of Detroit* to support his argument. No. 20-cv-12709, 2021 WL 4060986 (E.D. Mich. Sept. 7, 2021). There, the court held that a plaintiff's claims for declaratory and injunctive relief against the MDOC and the Detroit Detention Center were not moot even though the plaintiff was released from their custody.[5] *Id.* at *4. The court found that it was sufficiently likely that she could again be arrested by Detroit Police and held at the Detroit Detention Center, where all pre-arraigned arrestees in Detroit are held for up to 72 hours. *Id.* The court distinguished *Kensu* on the grounds that *Kensu* involved a claim against officials in a state prison. As such, the plaintiff in *Kensu* would have to be charged, convicted, and sentenced to return to that facility, making any possible future harm under those officials not sufficiently immediate or likely. *Id.* (citing *Kensu*, 87 F.3d at 173). In contrast, the plaintiff in *Chaaban* would merely need to be arrested by Detroit Police to return to the Detroit Detention Center. *Id.*

---

[5] The Detroit Detention Center operates under an interagency agreement between the Detroit Police Department and the MDOC. *Chaaban*, 2021 WL 4060986, at *1.

However, the *Chaaban* court did not consider the Sixth Circuit's opinion in *Sumpter*. In *Sumpter*, like in the present case, the plaintiff was an inmate at a local jail and sought declaratory and injunctive relief against the defendants for conduct that occurred while she was there. *Sumpter*, 868 F.3d at 478–79. But she was eventually transferred out of the jail to an MDOC facility to serve her sentence. *Id.* at 478 n.1. The Sixth Circuit noted that it could only "speculate" as to whether the plaintiff would ever return to the jail and found her claims for declaratory and injunctive relief moot. *Id.* at 491 (citing *O'Shea*, 414 U.S. at 497).

Considering the foregoing published authorities that address the issue of mootness in the context of an inmate who is no longer in a defendant's custody, this Court declines to follow the reasoning in *Chaaban*, which is an unpublished case. Therefore, the Court finds that Plaintiff's claims for injunctive and declaratory relief are moot.

### d.  **Money Damages Under RLUIPA**

#### i.  *Legal Background*

The Religious Land Use and Institutionalized Persons Act states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution… even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling government interest; and

(2) is the least restrictive means of furthering
that compelling government interest.

42 U.S.C. § 2000cc-1(a). The statute creates a cause of action that allows a

person to assert a violation of the statute and "obtain *appropriate relief* against a

government." *Id.* § 2000cc-2(a) (emphasis added). The term "government" includes

States, counties, municipalities, their instrumentalities and officers, and persons

acting under color of state law. *Id.* § 2000cc-5(4)(A).

What constitutes "appropriate relief" under RLUIPA has been the subject of

litigation in the courts. In *Sossamon v. Texas*, the Supreme Court held that

"appropriate relief" did not include money damages against a State, because States

are protected by sovereign immunity. 563 U.S. 277, 286 (2011). The *Sossamon* court

noted that the term "appropriate relief" was not sufficiently clear to put States on

notice that by accepting federal funds, they would be waiving their immunity to suits

that seek money damages. *Id.* ("Appropriate relief is open-ended and ambiguous

about what types of relief it includes[.]"). As a result, courts have ruled that state

officials sued in their *official* capacities cannot be liable for money damages under

RLUIPA, because "[a] suit against an individual in his official capacity is equivalent

to a suit brought against the governmental entity." *Spearman v. Williams*, No. 17-

cv-1070, 2023 WL 6829785, at *6 (W.D. Mich. Oct 17, 2023) (citing *Will v. Mich.

Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046,

1049 (6th Cir. 1994)).

In *Haight v. Thompson*, the Sixth Circuit took the *Sossamon* reasoning further by ruling that persons suing under RLUIPA could not obtain money damages from state officials sued in their *individual* capacities. 763 F.3d 554, 569 (6th Cir. 2014). The Sixth Circuit noted that in enacting RLUIPA, Congress legislated through its spending power. *Id.* at 568; *see* 42 U.S.C. § 2000cc-1(b)(1). A "distinguishing feature[]" of the spending power is that it allows Congress to "exceed its otherwise limited and enumerated powers by regulating in areas that the vertical structural protections of the Constitution would not otherwise permit." *Id.* at 568–69. As such, Congress must "speak with clarity" before it imposes money damages remedies— indeed before it imposes *any* conditions on the receipt of federal funds—"whether related to waivers of sovereign immunity or not." *Id.* at 568. Because, as discussed in *Sossamon*, the term "appropriate relief" is ambiguous, the Sixth Circuit concluded that RLUIPA does not permit claims for money damages. *Id.* at 568.[6]

## ii.    Discussion

Plaintiff argues that money damages under RLUIPA are available in this case. Plaintiff notes that the *Sossamon* decision only pertained to *state* defendants and

---

[6] RLUIPA is also enacted under Congress's commerce power. *See* 42 U.S.C. § 2000cc-1(b)(2). The Sixth Circuit rejected an argument that this additional authority changes the above analysis, stating that Congress does not invoke two sources of authority to permit two interpretations of the same phrase. "[C]ourts [should] avoid treating statutes like chameleons that turn green in some settings but not others." *Haight*, 763 F.3d at 569. Furthermore, the court held that a comparable "clear-statement rule" applies under the commerce power. *Id.*

waivers of sovereign immunity. ECF No. 18, PageID.287. Because municipal entities are not entitled to sovereign immunity, and because the instant Defendants are *municipal* officials, *Sossamon* is inapposite. ECF No. 18, PageID.288. Plaintiff points to the Supreme Court's recent decision, *Tanzin v. Tanvir*, as supporting his proposition. *Id.* at PageID.289–91 (citing *Tanzin v. Tanvir*, 592 U.S. 43 (2020)). Plaintiff also argues that *Haight* does not govern municipal liability for damages under RLUIPA, and that the Sixth Circuit "hinted" as such in *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 365 (6th Cir. 2018). ECF No. 18, PageID.291–92. In response, Defendants counter that *Haight* is controlling in this case. ECF No. 23, PageID.545. They also argue that *Tanzin* does not change the analysis, and that *Tree of Life Christian School* is distinguishable. *Id.* at PageID.544–47.

Plaintiff is correct that *Sossamon*, on its own, does not preclude money damages in the instant matter. *Sossamon*'s holding was entirely predicated on the idea that as it pertains to waiving their sovereign immunity, States were not sufficiently put on notice that they might be liable for money damages under RLUIPA. *See Sossamon*, 563 U.S. at 284–85 (discussing how the test for determining whether a State has waived its sovereign immunity is "stringent"). However, "only States and arms of the State possess immunity from suits authorized by federal law," and the Supreme Court has "repeatedly refused to extend sovereign

immunity to counties." *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006); *see also Sossamon*, 563 U.S. at 289 n.6 (distinguishing prior cases that permit money damages against nonsovereign entities). Here, Jackson County—Defendants' employer—would not be entitled to sovereign immunity, so any sovereign immunity analysis is inapplicable.

However, the Sixth Circuit's holding in *Haight* is applicable here. The *Haight* court did not base its ruling on a sovereign immunity analysis. *See Haight*, 763 F.3d at 568. Rather, "whether related to waivers of sovereign immunity or not," Congress must speak clearly when legislating under its spending power—and it failed to do so when enacting RLUIPA. *Id.* at 568–69. Indeed, the *Haight* court unambiguously stated, without qualification: "At stake at this point is only whether RLUIPA permits money-damages claims. We agree with the district court that it does not." *Id.* at 568. Thus, although the defendants in *Haight* were state officials being sued in their individual capacities, the logic of *Haight* extends to municipal officials sued in their official and individual capacities. Other district courts have found that *Haight*'s ruling extends to county or municipal officials. *See Hague v. Kent Cnty.*, No. 1:24-cv-9, 2024 WL 4116459, at *6 (W.D Mich. Sept. 9, 2024) (holding that the distinction between municipal and state makes no difference under *Haight*'s logic); *Eidam v. Cnty. of Berrien*, No. 1:19-cv-978, 2019 WL 7343354, at *8 (W.D. Mich.

Dec. 31, 2019) ("[A] money-damages action cannot be sustained against counties or municipalities.").

Furthermore, the Supreme Court's supervening decision in *Tanzin* does not abrogate *Haight.* In *Tanzin*, the Supreme Court considered whether parties can sue government officials for money damages under the Religious Freedom Restoration Act ("RFRA"). *Tanzin*, 592 U.S. at 50. The *Tanzin* court concluded that money damages are available against government officials sued in their individual capacities under RFRA, considering RFRA's language that permits courts to award "appropriate relief." *Id.* at 50–51. *Tanzin* distinguished *Sossamon* on the grounds that *Sossamon* pertained to sovereign immunity, whereas sovereign immunity is not at issue when officials are sued individually. *Id.* at 51–52.

Some district courts have held that *Haight* remains controlling after *Tanzin*. [7] In *Mease v. Washington*, the Western District of Michigan noted that RLUIPA was promulgated under Congress's spending and commerce powers, whereas RFRA was promulgated under Section 5 of the Fourteenth Amendment. *Mease v. Washington*, No. 2:20-cv-176, 2021 WL 1921071, at *14 (W.D. Mich. May 13, 2021). Thus, *Haight*'s logic for denying claims for money damages under RLUIPA was not directly impacted by *Tanzin*'s holding as it pertains to claims under RFRA. *Id.; see*

---

[7] For a contrary holding, see *Ruplinger v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:19-cv-583, 2021 WL 682075, at *4 (W.D. Ky. Feb. 22, 2021).

also *Hague*, 2024 WL 4116459, at \*6 ("*Tanzin* does not overrule or abrogate *Haight*"); *Chaaban*, 2021 WL 4060986, at \*5 (finding that *Haight* is controlling notwithstanding *Tanzin*); *Catlett v. Washington*, No. 20-13283, 2021 WL 3680196, at \*6 (E.D. Mich. Aug. 19, 2021) (finding that plaintiffs cannot bring a claim for money damages under RLUIPA because *Haight* remains binding).

Finally, in the absence of a clearer holding from the Sixth Circuit, *Tree of Life Christian Schools* does not change this result. In *Tree of Life*, the Sixth Circuit said that the plaintiff "ha[d] not abandoned its money-damages claim" under RLUIPA against the municipal defendant, "nor did the district court's permanent injunction moot it." *Tree of Life Christian Schools*, 905 F.3d at 365–66. However, the parties had not actually litigated whether money damages were available, and the Sixth Circuit did not mention *Haight* or provide any analysis on the issue. *Id.* As such, district courts have continued to apply *Haight* to municipal defendants. *See Hague*, 2024 WL 4116459, at \*6; *Eidam*, 2019 WL 7343354, at \*8 n.2.

Considering the foregoing, RLUIPA does not permit money damages claims against Defendants. Because Plaintiff's claims for declaratory and injunctive relief are moot, and because money damages are not available under RLUIPA, Plaintiff's RLUIPA claim must be dismissed in its entirety.[8]

---

[8] Because Plaintiff's RLUIPA claim is disposed of on these grounds, the Court need not address Defendants' argument that even if money damages are permitted,

### e. Administrative Exhaustion Under PLRA

### i.   *Legal Background*

The Prisoner Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As such, the PLRA "grants state prison systems the initial opportunity to address their internal problems." *Thomas v. Woolum*, 337 F.3d 720, 725 (6th Cir. 2003), *abrogated on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006). Thus, where an inmate has entirely failed to invoke the institution's grievance procedure, or where the inmate failed to appeal denials of his grievance to the highest level, he has "not exhaust[ed] available administrative remedies" under the PLRA. *Id.* at 726. The applicable grievance process is determined by the institution's own grievance procedure. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Failure to exhaust is an affirmative defense. *Id.* at 212.

While an inmate is required to exhaust all *available* administrative remedies, he "need not exhaust unavailable ones." *Coopwood v. Wayne Cnty.*, 74 F.4th 416, 422 (6th Cir. 2023) (quoting *Does 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019)).

---

they are not warranted as a matter of law under these facts. ECF No. 19, PageID.312–13; ECF No. 14, PageID.126–30.

In other words, "a court must evaluate the availability of prison grievance mechanisms '*in practice*'" *Id.* (quoting *Does 8-10*, 945 F.3d at 963) (emphasis added). The Supreme Court has clarified that an administrative remedy, even if it is on the books, is not "available" in practice where (1) an administrative procedure operates as a "simple dead end"; (2) the procedure is "so opaque that it becomes… incapable of use"; and (3) when administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

## ii.    *Discussion*

Defendants argue that Plaintiff failed to comply with the administrative exhaustion requirements of the PLRA, noting that although Plaintiff alleges that he made "formal requests" for accommodation, he alleges nothing regarding the appeal process. ECF No. 14, PageID.138. Furthermore, they claim that Plaintiff alleges nothing to show that the Jail's grievance procedure was "unavailable." ECF No. 19, PageID.312. Plaintiff responds by noting that the Court has already ruled on this issue in its order granting Plaintiff's TRO and determined that Plaintiff exhausted his administrative remedies. Therefore, the issue is no longer in question. ECF No. 25, PageID.667. Plaintiff argues in the alternative that even if the matter of exhaustion was not decided with finality, it would be inappropriate to rule on it because it remains a genuine issue of material fact. *Id.* at PageID.668.

In Plaintiff's Complaint, he states that before Ramadan began, he made requests for a religious meal accommodation which were ignored. ECF No. 1, PageID.16 ¶ 46. He says that on the first day of fasting, he made another accommodation request, and "attempted" to file a grievance with Jail staff for not having his accommodation in place. *Id.* ¶ 47. He further alleges that he lodged several more complaints with staff and officers, but no one provided him with a grievance form. *Id.* ¶ 48.

Taking Plaintiff's allegations as true and considering the pleadings in the light most favorable to Plaintiff, Plaintiff has stated a plausible claim that he exhausted the administrative procedures that were "available" to him. If Jail staff did not provide Plaintiff with the grievance form he needed despite his multiple requests, the grievance process was possibly a "dead end," as described in *Ross. Ross*, 578 U.S. at 643–44. Furthermore, Plaintiff notes that the formal grievance procedure at the Jail requires appealing to four different people, and that there is no emergency grievance procedure in place. Given the brief duration of Ramadan, Plaintiff alleges that his issues would not have been addressed in a timely fashion. ECF No. 1, PageID.17 ¶ 51. Considering the alleged failure of the Jail staff to even provide Plaintiff with a grievance form to begin the administrative process, this allegation is plausible on its face and implicates another potential "dead end." *Ross*, 578 U.S. at 643–44.

Therefore, at this stage, the Court cannot dismiss the remaining claims as failing to comply with the PLRA's administrative exhaustion requirement. However, the remaining claims may be dismissed upon consideration of their merits.

### f.  § 1983 Claims

### Individual Capacity Claims

### i.  *Legal Background*

Section 1983 creates a cause of action for those who are subjected to the deprivation of their rights, privileges, or immunities guaranteed by the Constitution or the laws, at the hands of any person acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. It is considered a "species of tort liability" for constitutional violations. *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020) (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 362 (2017)). Therefore, it is appropriate to look to "longstanding tort principles when defining the contours of a § 1983 claim." *Id.* In accordance with general tort principles, a plaintiff must prove that the defendant was "*personally* at fault and that the defendant's culpable conduct (not somebody else's) *caused* the injury." *Id.* (emphasis in original). Unlike many common law torts, an official may not be liable under a *respondeat superior* theory. *Iqbal*, 556 U.S. at 677 (stating that in a § 1983 suit, "masters do not answer for the torts of their servants"). Therefore, a plaintiff "must plead that each Government-

official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.

Following this logic,

> [The] failure of a supervisory official to supervise, control, or train the offending individual [employees] is not actionable absent a showing that the official either encouraged or in some way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [employees].

*Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)) (alteration in original). A supervisor's awareness of a violation, but failure to "take appropriate action… is insufficient to impose liability on supervisory personnel under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that denying administrative grievances and merely failing to remedy alleged retaliatory conduct against plaintiff does not constitute a sufficient basis for § 1983 liability); *see also Johnson v. Washington*, No. 22-cv-12360, 2023 WL 9510833, at *9 (E.D. Mich. Dec. 18, 2023) ("[Section] 1983 claims relying solely on a failure to act or *respondeat superior* are futile as a matter of law[.]"). "It is insufficient to make generic or blanket allegations pertaining to defendants or allegations lumping together individual defendants." *Rouse v. Washington*, No. 20-cv-11409, 2021 WL 2434196, at *8 (E.D. Mich. June 15, 2021). Furthermore, "mere citation to each individual defendant's job

description—without an accompanying allegation showing how each defendant failed to comply with his or her job description—is insufficient." *Id.*

### ii. *Discussion*

Defendants argue that Plaintiff has failed to plead facts under which Defendants Stewart and Coburn could be held liable on an individual basis, because Plaintiff has not shown that they were personally involved in the underlying improper conduct. ECF No. 19, PageID.315, 320–21. Plaintiff responds by arguing that he has pleaded sufficient personal involvement for Defendants Stewart and Coburn under a theory of supervisory liability because the Complaint alleges that Defendants, in response to questions about his Ramadan accommodations, (1) acknowledged that he was not provided a Ramadan-compliant meal for three days at the beginning of Ramadan, (2) acknowledged he did not receive his sunset meal timely, and (3) did not respond to his complaints about food quality or quantity. ECF No. 1, PageID.12. Later, Plaintiff's Complaint alleges that Defendants Stewart and Coburn "acknowledge[d] receipt" of his complaints. *Id.* at PageID.17.

Aside from these specific instances of alleged misconduct, Plaintiff's Complaint only refers to failures of unnamed jail staff, or refers to "Defendants" generically without specifying what Defendants' actual involvement was in the alleged constitutional violations. These allegations are not enough to create liability for Defendants Coburn and Stewart. Plaintiff must allege "that the official at least

implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [employees]." *Id.* (alteration in original). "[F]ailing to intervene is not the same as affirmatively granting authorization." *Does v. Whitmer*, 69 F.4th 300, 307 (6th Cir. 2023). Plaintiff has alleged no facts that indicate Defendants Stewart and Coburn specifically authorized or approved of Jail staff's failure to feed Plaintiff in a timely manner, or to feed Plaintiff the full 2,800 calories as prescribed in the Ramadan meal plan.

To the extent Plaintiff argues that his allegations demonstrate "knowing acquiescence" on the part of Defendants, their failure to act under these circumstances does not rise to that level. In *Shehee*, the Sixth Circuit considered whether the defendants' failure to remedy alleged retaliatory behavior against the plaintiff created supervisory liability. *Shehee*, 199 F.3d at 300. The court concluded that their mere failure to act to remedy the alleged violations—even though "the situation was in their control"—did not constitute participation, encouragement, authorization, or acquiescence in the wrongs. *Id.* Similarly, in *Poe v. Haydon*, the Sixth Circuit considered whether the defendants were liable for failing to take action to correct the sexual harassment the plaintiff experienced at the hands of another employee. 853 F.2d 418, 422 (6th Cir. 1988). The Sixth Circuit held that the plaintiff "at best… has merely claimed that the appellants were aware of alleged harassment, but did not take appropriate action. This is insufficient to impose liability on

supervisory personnel under § 1983." *Id.* at 429; *see also Lee v. Mich. Parole Bd.*, 104 Fed. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.").

Where courts have found that supervisory inaction *is* tantamount to "knowing acquiescence," the official failed to act in circumstances where there were multiple previous violations that were ignored. For example, in *Peatross v. City of Memphis*, the Sixth Circuit found it plausible that the director of the Memphis Police Department "knowingly acquiesced" to constitutional violations for purposes of a § 1983 claim where he failed to train or supervise officers to avoid using excessive force, failed to investigate allegations of excessive force, and attempted to cover up instances of excessive force. 818 F.3d 233, 243 (6th Cir. 2016). Indeed, there had been fifty-four officer shootings within a four-year period, and the director recognized the need to improve the department's operations but made no improvements. *Id.* Likewise, in *Leach*, the Sixth Circuit considered whether a sheriff was liable under § 1983 because he failed to supervise jail personnel in order to ensure the rights of paraplegic inmates. *Leach*, 891 F.2d at 1246. The court upheld the district court's finding that the failure to supervise constituted sufficient personal involvement, basing this judgment on the fact that other paraplegic inmates had been

similarly mistreated and because the sheriff had not punished responsible individuals in these instances. *Id.*

Here, Plaintiff's allegations, taken as true, only plausibly show that Defendants were made aware that Jail staff members were failing to conform to the Jail's Ramadan policy as it pertains to Plaintiff and did not take immediate action. This is insufficient to create § 1983 liability. *Poe*, 853 F.2d at 429. Plaintiff's other allegations against these Defendants either make "generic or blanket allegations… lumping [Defendants] together," or refer to Defendants' job duties "without [any] accompanying allegation showing how each defendant failed to comply with his… job description." *Rouse*, 2021 WL 2434196, at *8. Furthermore, Plaintiff has pleaded no facts to plausibly demonstrate that Defendants' alleged inaction is anything more than an isolated incident, so as to convert their inaction into "knowing acquiescence." Although Plaintiff made various conclusory statements that Defendants have treated other Muslim detainees wrongfully during Ramadan, Plaintiff has alleged no facts whatsoever to support these claims. *See* ECF No. 1, PageID.18–29; *see Rouse*, 2021 WL 2434196, at *8. As such, these allegations are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681.

Considering the foregoing, Plaintiff's Complaint fails to plead facts upon which relief can be granted under § 1983 against Defendants Coburn and Stewart in their personal capacities.

**Official Capacity Claims**

### i.   *Legal Background*

As it pertains to official-capacity actions specifically, such suits are "in all respects other than name" a suit against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, a suit against an official in his official capacity is treated legally as a suit against the government entity. *See Monell v. Dep't of Social Servs. of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978). For an official-capacity action against a municipal official under § 1983 to prevail, the plaintiff must show that the municipality was a "moving force" behind the deprivation; in other words, the municipality's "policy or custom" must have played a role in the violation of federal law. *Graham*, 473 U.S. at 166. This is because a municipality cannot be held liable "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). As such, an official capacity claim against a municipality will prevail where the plaintiff shows that the official's "execution of [the] government's policy or custom… inflicts the injury," *Id.* at 694, or where there is "an affirmative link between the policy and the particular constitutional violation alleged." *City of Okla. v. Tuttle*, 471 U.S. 808, 823 (1985).

A plaintiff may prove the existence of a municipality's illegal policy or custom by looking to "(1) the municipality's legislative enactments or official

agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

### ii.   Discussion

Regarding the official capacity claims against all three Defendants, Defendants argue that under the *Thomas* categories, (1) Plaintiff admits that Jackson County Jail had adequate formal policies in place for feeding its Muslim inmates during Ramadan; (2) the Complaint fails to mention how Defendant Schuette—the only individual with "decision-making authority"—took any unconstitutional action in this case; (3) the Complaint does not allege inadequate training; and (4) the Complaint fails to show that there was a custom of tolerance of misconduct because it does not demonstrate any history of rights violations. *Id.* at PageID.315–19.

Plaintiff responds that he has alleged sufficient personal involvement of all three Defendants, and refers to all of them as "decisionmakers" for purposes of official liability. *See* ECF No. 1, PageID.5–8; ECF No. 25, PageID.667. Plaintiff also argues that the way in which Defendants handled Plaintiff's complaints constitutes a custom of tolerance and acquiescence in federal rights violations sufficient to support official capacity claims against them. ECF No. 25, PageID.672.

Alternatively, Plaintiff claims that whether a custom or policy exists cannot be decided on a motion to dismiss. *Id.* at PageID.672.

Plaintiff has indeed acknowledged that a formal Ramadan meal policy exists at the Jail and has not argued that the formal policy, in and of itself, violates Plaintiff's rights. *See* ECF No. 1, PageID.2. In addition, as Defendants note, Plaintiff has not alleged a failure in training. As such, at issue is whether the Defendants had decision-making authority and violated Plaintiff's rights, and whether there was a custom of tolerance of or acquiescence in federal rights violations.

### A. Decision-making Authority

An official-capacity claim may be maintained against a person with decision-making authority, even if the alleged harm resulted from a single act by that person. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "If a decision to adopt a particular course of action is properly made by that government's *authorized decisionmakers*, it surely represents an act of official government "policy" as that term is commonly understood." *Id.* at 481 (emphasis added). However, even if an official has discretion in the exercise of a particular function, municipal liability does not arise automatically. *Id.* at 480–82. Rather, the official's decisions must be "final and unreviewable and… not constrained by the official policies of superior officials" for that official to be considered a decisionmaker. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993); *see also City of St. Louis v. Prapotnik*, 485 U.S.

112, 127 (1988). As such, an official is a decisionmaker for purposes of an act in question if state or local law vests him with the authority to establish policy with respect to the action taken, and the authority is final. *Jorg v. City of Cincinnati*, 145 Fed. App'x 143, 146 (6th Cir. 2005).

Here, Defendant Schuette is the Sheriff of Jackson County. Defendant appears to concede that Sheriff Schuette would be a "decisionmaker," *see* ECF No. 19, PageID.315–17, and Sixth Circuit cases have accepted without question that sheriffs are decisionmakers. *See Leach*, 891 F.2d at 1246; *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013). Thus, the question is whether Sheriff Schuette took any action in this case upon which Jackson County could be held liable.

The Complaint alleges that Schuette is responsible for formulating and overseeing the implementation of all policies at the Jail. ECF No. 1, PageID.5. As with the other Defendants, the Complaint states that Schuette was "questioned" about Plaintiff's Ramadan accommodations, acknowledged that Mr. Owens' meals were not provided until March 13th and were provided late, and failed to respond to inquiries about the quality and quantity of Plaintiff's food. *Id.* at PageID.12. Aside from this, Schuette is not mentioned elsewhere in the Complaint except where his title and job duties are described, or where he is generically "lumped in" with the other Defendants. *Id.* at PageID.5; *see Rouse*, 2021 WL 2434196, at *8

The same problem that plagued Plaintiff's claims against Defendants Coburn and Stewart in their personal capacities plagues Plaintiff's claim against Defendant Schuette in his official capacity: a mere failure to act in a single instance will not establish supervisory liability. *Peatross*, 818 F.3d at 241. To hold a municipal decisionmaker liable under § 1983, there must be more than *respondeat superior* liability. For the reasons described in the analysis concluding that Defendants Coburn and Stewart were not sufficiently personally involved in this matter in their individual capacities, the claim fails against Defendant Schuette in his official capacity as well. *See, e.g.*, *Poe*, 853 F.2d at 429.

Likewise, the official capacity claims against Stewart and Coburn fail under a "decisionmaker" theory because of the lack of their personal involvement. *See id.* In addition, the Court notes that Plaintiff alleged no facts to demonstrate that Defendants Stewart and Coburn were "decisionmakers"—i.e., individuals with final policymaking authority pertaining to Ramadan meals—upon whom municipal liability would lie on a decisionmaker theory. *See Jorg*, 145 Fed. App'x at 146.

## B. Custom of Tolerance for Federal Rights Violations

"A 'custom' for purposes of *Monell* liability must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 690–91). The Sixth Circuit has expanded on the understanding of "custom" by

holding that for a plaintiff to prevail on a custom-of-tolerance claim, the plaintiff must show "that there was a pattern of inadequately investigating similar claims." *Burgess*, 735 F.3d at 478. As such, allegations of "a *single* failure" to investigate do not suffice. *Pineda*, 977 F.3d at 495 (emphasis in original). In other words, there must be "multiple earlier inadequate investigations and they must concern comparable claims." *Id.* (quoting *Stewart v. City of Memphis*, 788 Fed. App'x 341, 344 (6th Cir. 2017)). The importance of pleading multiple prior failures derives from § 1983's "rigorous" causation standard. *Id.* Because "an entity's failure to investigate the plaintiff's specific claim will, by definition, come *after* the employee's action that caused the injury about which the plaintiff complains... there can be no causation from that single failure to investigate." *Id.*

In Plaintiff's response to the present Motion, Plaintiff does not offer anything to refute this case law except to cite *Monell* for the proposition that "discriminatory practices of state officials.... [a]lthough not authorized by written law... could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 690 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)); ECF No. 25, PageID.671. However, this proposition does not refute Defendants' position. *Monell* recognizes that informal practices may lead to § 1983 liability in some circumstances, and Sixth Circuit case law describes *when*

such informal practices may lead to § 1983 liability. *See Pineda*, 977 F.3d at 495. It requires a "clear and persistent pattern of violations." *Doe*, 103 F.3d at 508.

Plaintiff's Complaint lacks any factual allegations that Jackson County Jail has failed in other instances to sufficiently feed Muslim inmates, or that this has been a part of some clear pattern of conduct. ECF No. 1. And although Plaintiff asserts that Defendants should have done more in the moment to address his own grievances, he "simply ha[s] not demonstrated a pattern of inadequate investigation of similar claims as required" to maintain an official capacity § 1983 claim. *Burgess*, 735 F.3d at 478. As such, Plaintiff's official capacity claim based on a custom-of-tolerance theory fails.

Plaintiff argues that the determination of whether there is municipal liability in this case is not appropriate at the motion to dismiss stage. ECF No. 25, PageID.672. However, insufficient pleadings to maintain a claim upon relief may be granted are appropriate to dismiss under Rule 12(b)(6) before discovery is taken. *See* Fed. R. Civ. P. 12(b)(6). Because the Court found that Plaintiff fails to state a claim, dismissal is proper under 12(b)(6).[9]

---

[9] Because the Court grants Defendants' motion for dismissal of the § 1983 claims on these grounds, the Court need not address Defendants' alternative arguments that the individual-capacity Defendants are entitled to qualified immunity or that there was no Constitutional violation that occurred.

## IV.   CONCLUSION

Accordingly, for the reasons described above, Defendants' Motion to Dismiss

[ECF No. 19] under Rules 12(b)(1) and 12(b)(6) is **GRANTED** in its entirety.

SO ORDERED.

Dated:  October 10, 2024                     /s/Gershwin A. Drain
                                             GERSHWIN A. DRAIN
                                             United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 10, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager